UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JESSICA JONES,

      Plaintiff,

      v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

      Defendant.

No. 1:14-CV-03091-JTR

ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF Nos. 18, 20. Attorney D. James Tree represents Jessica Jones (Plaintiff); Special Assistant United States Attorney Benjamin J. Groebner represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on June 22, 2011, alleging disability for a closed period between June 1, 2007, and

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 1

August 3, 2012, due to physical and mental impairments.  Tr. 215-24.

The SSI application was denied initially and upon reconsideration.  Tr. 75-87, 88-101.  Administrative Law Judge (ALJ) Virginia M. Robinson held a hearing on January 15, 2013, at which Plaintiff, represented by counsel, testified as did vocational expert (VE) Trevor Duncan.  Tr. 34-71.  With Plaintiff's consent, the ALJ amended the disability onset date to July 16, 2008, the date Plaintiff last worked.  Tr. 69-70.  The ALJ issued an unfavorable decision on March 22, 2013.  Tr. 14-28.  The Appeals Council denied review.  Tr. 1-4.  The ALJ's March 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on June 27, 2014.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 38 years old at the beginning of the relevant period.  Tr. 39.  Plaintiff attended school through the eighth grade, and has not obtained a GED.  Tr. 284.  Plaintiff has worked in a warehouse, as a deli and seafood clerk at Walmart, and as a commercial truck driver from 2005 to 2008.  Tr. 284, 301.  In August 2012, Plaintiff started working as a cook at Triumph Treatment Center.  Tr. 38, 69-70.  Plaintiff testified that she "love[s] the job, but it's really hard on [her]."  Tr. 44.  Plaintiff gets along well with the other people at her job, and reported that she generally "get[s] along with people."  Tr. 44, 49.

Plaintiff's life has been tragic in many ways.  She was physically and sexually abused as a child by her step mother and other family members, and abused as an adult by her husbands and partners.  Tr. 370-72.  Plaintiff has been homeless for periods of time.  Tr. 40, 55-56.  Plaintiff has a history of depression, drug use, and self-mutilation.  *See* Tr. 341, 370-72.  Plaintiff had four children, but

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 2

the State removed all of them from her care.  Tr. 391.

At the administrative hearing, Plaintiff described being unable to work because of depression and anxiety.  Tr. 47.  She also testified that physical pain in her neck, knees, and back made working difficult.  Tr. 58.  She testified that, between 2008 and 2012, she would typically sit and stare at the walls, watch television, and sleep.  Tr. 47.  Plaintiff testified that she was afraid of people and "wouldn't leave the house," except for medical appointments.  Tr. 48.  Plaintiff reported attending group therapy and using medication to control her anxiety and depression.  Tr. 48.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence exists that will support a finding

of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. § 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On March 22, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity for a continuous twelve-month period. Tr. 16. At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, affective disorder, anxiety disorder, personality disorder, and eating disorder. Tr. 16-18. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18-20.

The ALJ assessed Plaintiff's residual function capacity (RFC) and determined she had the ability to perform light work subject to some exceptions.

Despite her impairments, the ALJ found Plaintiff had the ability to: lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk, and sit, for about six hours in an eight hour workday; frequently climb ramps and stairs, and occasionally climb ladders, ropes or scaffolds; and, frequently stoop, kneel, crouch, crawl.  Tr. 20.  The ALJ also found Plaintiff could complete simple to moderately complex tasks, involving only simple, work-related decisions, and could occasionally interact with the public, but must avoid concentrated exposure to workplace hazards.  Tr. 20.

The ALJ concluded at step four that Plaintiff was not able to perform her past relevant work.  Tr. 27.  At step five, however, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the VE, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of production assembler, housekeeper, and hand packager.  Tr. 27-28.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time between July 26, 2008, and August 3, 2012.  Tr. 28.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by failing to (1) properly credit Plaintiff's testimony about the severity of her symptoms; (2) accord weight to "each and every" opinion of Plaintiff's treating and examining sources, including their scoring of Plaintiff's Global Assessment of Functioning (GAF), ECF No. 18 at 11; (3) credit the lay witness testimony of Norman Landry; and, (4) account for all of Plaintiff's limitations in the ALJ's RFC determination.

## DISCUSSION

### A.    Plaintiff's Credibility

Plaintiff contests the ALJ's adverse credibility determination in this case.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 5

ECF No. 18 at 20.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC determination. Tr. 21. The ALJ reasoned that Plaintiff was less than credible because (1) she worked immediately before and after her alleged period of disability; (2) her ability to perform activities of daily living, including her ability to engage socially, contradicted her reported limitations; (3) she received minimal and conservative treatment for her physical impairments; (4) treatment notes indicate "normal psychiatric observations"; and, (5) her testimony was contradictory. Tr. 21-23. The ALJ did not find Plaintiff was malingering.

## 1. Evidence of Employment Before and After Closed Period

The ALJ's first reason for discounting Plaintiff's credibility, i.e., that she worked immediately before and after her alleged period of disability, is based on legal error. An ALJ should not use a claimant's activities outside the closed period to discount Plaintiff's credibility. *Angulo v. Colvin*, 577 Fed. Appx. 686, 687 (9th Cir. 2014); *see also Moore v. Commissioner of the Social Security Administration*, 278 F.3d 920, 924 (9th Cir. 2002) (noting "the Social Security Act and regulations

are designed to encourage individuals who have previously suffered from a disability to return to substantial gainful employment.") (internal quotation marks omitted).  Thus, the ALJ made a legal error in using Plaintiff's employment outside the closed period to discount her credibility.

**2. Activities of Daily Living (ADL)**

The ALJ's second reason for discounting Plaintiff's credibility, i.e., that her symptom testimony was inconsistent with her ADL, is also not a specific, clear, and convincing reason.

The ALJ pointed out that Plaintiff herself stated that she could perform household chores.  But Plaintiff does not contest that her physical impairments are not disabling.  Furthermore, her ability to perform household chores is within the range of physical activity assessed by multiple physicians.  The ALJ also cites to the fact that Plaintiff is capable of working as a cook and actually enjoys her job.  As discussed *supra*, this does not necessarily mean that Plaintiff was capable of working during the relevant period of this case.

The ALJ's conclusion that Plaintiff's attendance of a Cinco de Mayo parade was indicative of Plaintiff being capable of engaging in social activity is not supported by substantial evidence.  Other than the one parade, there is practically no mention of Plaintiff engaging in activities outside her home in the lengthy administrative record other than medical appointments, therapy, and occasional grocery shopping.  *See Tackett*, 180 F.3d at 1098 (evidence must be more than a "mere scintilla" to meet substantial evidence standard).

The ALJ also found that Plaintiff's multiple romantic relationships evidenced "social capability, flexibility, and adaptability."  Tr. 22.  This statement is also not supported by substantial evidence in the record.  Treatment notes indicate that Plaintiff's relationships were often tumultuous and that she alternated between seeking social connection and periods of self-isolation.  *See, e.g.*, Tr. 399.  Multiple treatment providers noted that Plaintiff was estranged from her family and

had no social support network.  *See*, *e.g.*, Tr. 401.  Given Plaintiff's history and need to connect with people, having two relationships with two different men over a period of several years does not evidence "social capability, flexibility, and adaptability."  Tr. 22.

Finally, the ALJ noted that while Plaintiff was living in her sister's home she was able to care for her nephew for some time between May and August 2012. Being able to care for a child inside one's home does not necessarily evidence that a claimant is capable of working.  The ALJ's conclusion that caring for a child required Plaintiff to "handle at least routine stressors and responsibilities, and make simple judgments and decisions," Tr. 22, does not establish that Plaintiff "spent[t] a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting," which is required for ADL to be grounds for an adverse credibility finding, *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted).

In summary, the ALJ's conclusion that Plaintiff's ADL are inconsistent with her symptom testimony is not supported by substantial evidence and is based, in part, on legal error.  As such, this is not a specific, clear, and convincing reason for discounting Plaintiff's credibility.

### 3.  Minimal and Conservative Treatment for Pain

The ALJ's third reason for discounting Plaintiff's credibility, i.e., she received minimal and conservative treatment for her neck and back pain, is not a specific, clear, and convincing reason for rejecting her symptom testimony relating to her mental impairments.  As discussed *supra*, Plaintiff does not contest the ALJ's determination that she is physically capable of a range of tasks.  Rather, Plaintiff disagrees with the ALJ's determination that her mental impairments do not prevent her from working.  Regarding her mental impairments, the record reflects that Plaintiff largely complied with recommended courses of treatment including participating in group and individual therapy and taking prescription

medication to help her anxiety and depression.  The fact that Plaintiff did not seek treatment for her physical pain is largely immaterial to her credibility regarding her mental impairments.

### 4. Treatment Notes Indicating Normal Presentation

The ALJ's fourth reason for discounting Plaintiff's credibility, i.e., that treatment notes often document "normal psychiatric observations," is similarly unpersuasive.  The ALJ correctly observes that numerous treatment notes state that Plaintiff appeared to have normal attention span, concentration, mood, and affect, and was alert and cooperative.  Tr. 23.  The ALJ then finds these observations inconsistent with Plaintiff's testimony that she mostly stays home and avoids other people.  Tr. 23.  The treatment note observations, however, have little, if anything, to do with Plaintiff's ability to function socially.  The fact that she can present herself to a treatment provider to receive medical care in a one-on-one clinical setting is not inconsistent with her testimony that she generally stays home and avoids other people.  This is not a specific, clear, and convincing reason to discount Plaintiff's credibility.

The ALJ further cites to one instance where some of Plaintiff's test results were invalid because she did not put forth maximum effort.  Tr. 23, 363. The ALJ concludes that these invalid tests indicate Plaintiff "is capable of significantly more social contact than she described at the hearing, and that she may have a tendency to provide exaggerated responses during mental testing."  Tr. 23.  The invalid test results, however, appear to relate to tests for "General Memory" and "Auditory Recog[nition]."  Tr. 364.  It is unclear how these invalid tests would measure Plaintiff's social ability.  Furthermore, the ALJ's inference from these invalid test results, i.e., that Plaintiff generally has "a tendency to provide exaggerated response," is not a specific reason to find Plaintiff incredible.  *See Lester*, 81 F.3d at 834 (general findings are insufficient).

The ALJ erred in discounting Plaintiff's credibility regarding her social

abilities based on treatment note observations and invalid test scores that had nothing to do with social functioning.

### 5.  Contradictory Testimony

The ALJ's final reason for discounting Plaintiff's testimony, i.e., Plaintiff's contrary reasons for why she stopped working in 2007, was not in error.  In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.  As pointed out by the ALJ, Plaintiff was inconsistent about why she stopped working.  *Compare* Tr. 47 (Plaintiff stating she was unable to work because of depression and anxiety) *with* Tr. 54 (Plaintiff stating she lost her job because she had beer in her truck's refrigerator) *and* Tr. 312 (Plaintiff stating she stopped driving due to herniated disc in neck). Why Plaintiff stopped working is significant to the disability determination and could be grounds to question her credibility.  But given that the ALJ's credibility determination is flawed on several other grounds, this single inconsistency is not enough to discount Plaintiff's symptom reporting in its entirety.

In sum, the ALJ's adverse credibility finding is based, in part, on legal errors and is not entirely supported by substantial evidence.  On remand, the ALJ should reevaluate Plaintiff's credibility consistent with the Court's analysis *supra*.

### B.    ALJ's Evaluation of Medical and "Other" Sources

Plaintiff argues the ALJ failed to properly weigh the medical opinions of "each and every one" of Plaintiff's treating and examining sources.  ECF No. 18 at 12.  More precisely, Plaintiff seems to challenge the ALJ's evaluation of the sources that treated her for her mental impairments.

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. rel. Wolff v. Barhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).  In weighing medical source opinions, the ALJ should

distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *See*, *e.g.*, *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Plaintiff argues that the ALJ failed to properly credit the medical opinions of Jan Kouzes, Ed.D.; Slyvia Thorpe, Ph.D.; and each of the three State agency consultants: Leslie Postovoit, Ph.D.; Eugene Kester, M.D.; and, Matthew Comrie, Psy.D. Plaintiff also argues that the ALJ did not properly credit the opinions of "other" sources, including the opinions of Plaintiff's therapists.

### 1.    Jan Kouzes, Ed.D.

Plaintiff presented to Dr. Kouzes for a consultative psychological evaluation on June 2, 2011. Tr. 457-62. Dr. Kouzes diagnosed Plaintiff with major depressive disorder, recurrent, severe, without psychotic symptoms; posttraumatic

stress disorder (PTSD); and, borderline personality disorder.  Tr. 459.  Dr. Kouzes assessed several moderate limitations on Plaintiff's ability to perform basic work related tasks.  Tr. 459-60.  Dr. Kouzes found Plaintiff markedly[1] limited in her ability to (1) be aware of normal hazards and take appropriate precautions; (2) communicate and perform effectively in a work setting with public contact; and, (3) maintain appropriate behavior in a work setting.  Tr. 460.  In her medical source statement, Dr. Kouzes concluded, "[Plaintiff] was alert and oriented.  She evidenced problems with memory and concentration.  Her response time was slowed and she requested that questions be repeated, restated.  She appeared confused.  She is likely to need significant services, food, housing DVR to make an effective return to work."  Tr. 460.

The ALJ gave little weight to Dr. Kouzes' opinion because (1) Dr. Kouzes "did not review any treatment notes other than one emergency room visit"; (2) Dr. Kouzes' opinions were based on Plaintiff's unreliable self-reporting; and, (3) Dr. Kouzes did not complete a mental status examination, suggesting that Dr. Kouzes did not carefully review and complete the State agency form.  Tr. 25-26.

The ALJ did not give specific and legitimate reasons for rejecting Dr. Kouzes' opinions.

First, the ALJ's conclusion that Dr. Kouzes reviewed only one record was clearly erroneous as Dr. Kouzes lists four medical records that she reviewed, including two State agency psychological evaluations, on the front page of her evaluation.  Tr. 457.  Defendant appears to concede that "the ALJ may have been mistaken in this respect."  ECF No. 20 at 12.

Second, as discussed *supra*, the ALJ did not give specific, clear, and convincing reasons for discounting Plaintiff's credibility, especially in regards to

_____

[1]A "marked" limitation would have a "very significant interference" in the individual's ability to perform certain tasks.  Tr. 459.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 12

her reporting of her social functioning.  Thus, the ALJ's second reason for rejecting Dr. Kouzes' opinions also fails.

Thirdly, the ALJ's suggestion that Dr. Kouzes neither completed a mental status examination nor carefully completed the form is unfounded.  As documented in her evaluation, Dr. Kouzes did administer a mental status exam, Tr. 461-62, as well as reviewed Plaintiff's psychiatric records and personally observed Plaintiff, Tr. 457-62.  In her medical source statement, Dr. Kouzes quoted Plaintiff, but also reached her own conclusions based on her professional judgment. *See* Tr. 460. Nothing would suggest that Dr. Kouzes was not careful and complete in completing her evaluation or that she acted in anyway contrary to a "highly qualified" medical specialist and an "expert[] in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i).

The ALJ did not give specific and legitimate reasons for discounting Dr. Kouzes' opinions.

**2.   Sylvia Thorpe, Ph.D.**

Plaintiff presented to Dr. Thorpe for a psychological evaluation on March 10, 2009.  Tr. 363-72.  Dr. Thorpe diagnosed Plaintiff with major depressive disorder; pain disorder associated with both psychological factors and a general medical condition; alcohol abuse disorder; and, polysubstance dependence disorder, in full sustained remission.  Tr. 367.  Dr. Thorpe opined that Plaintiff's mental impairments would have a moderate impact on her ability to work.  Tr. 367-68.  Dr. Thorpe recommended treatment with medication and regular substance abuse therapy.  Tr. 369.  Dr. Thorpe estimated that Plaintiff's limitations would last three to six months.  Tr. 369.

The ALJ gave "some weight" to Dr. Thorpe's evaluation.  Tr. 25.  The ALJ reasoned that Dr. Thorpe found Plaintiff had only moderate limitations and few of these limitations would impact her work-related abilities.  Tr. 25.  The ALJ also cited Dr. Thorpe's conclusion that some of Plaintiff's test results were invalid

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 13

because Plaintiff "gave up easily" on the tests.  Tr. 25; 363.  The ALJ further noted that Dr. Thorpe opined that Plaintiff's limitations were temporary.  Tr. 25, 369.

The ALJ gave specific and legitimate reasons for giving limited weight to Dr. Thorpe's evaluation.  The mere diagnosis of an impairment is insufficient to sustain a finding of disability; the impairment must actually limit a claimant's ability to work.  *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  The ALJ correctly noted that although Dr. Thorpe found Plaintiff to have numerous impairments, Dr. Thorpe ultimately concluded the impairments would not preclude Plaintiff from working.  Tr. 25, 369.  Furthermore, the ALJ did not err in considering Dr. Thorpe's opinion that Plaintiff failed to put forth maximum effort in clinical testing (although as discussed *supra*, the invalid tests do not seem to measure Plaintiff's social functioning and the ALJ erred in using the invalid results to question Plaintiff's general credibility).  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ may consider a claimant's failure "to give maximum or consistent effort during . . . evaluations).  Finally, Dr. Thorpe's opinion that Plaintiff's impairments would last for only three to six months, Tr. 369, is another legitimate reason for giving the opinion little weight.  *See* 42 U.S.C. § 1382c(a)(3)(A) (disability must be premised on medically determinable physical or mental impairments that have "lasted or can be expected to last for a continuous period of not less than twelve months").  The ALJ did not err in evaluating Dr. Thorpe's opinions.

### 3.    State Agency Reviewing Psychologists and Psychiatrists

Three state agency psychiatric consultants—Drs. Postovoit, Kester, and Comrie—reviewed Plaintiff's medical records.  *See* Tr. 83-85 (Dr. Postovoit's review dated July 26, 2011), 97-99 (Dr. Kester's review dated September 24, 2011), 411-27 (Dr. Comrie's review dated June 8, 2009).

Dr. Comrie found Plaintiff was mildly limited in activities of daily living, markedly limited in maintaining social functioning, and moderately limited in

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 14

maintaining concentration, persistence, or pace.  Tr. 421.  Dr. Comrie indicated that Plaintiff could perform simple routine tasks and would be able to work with coworkers and supervisors, but that she should have "limited" contact with the public.  Tr. 427.  The ALJ gave great weight to Dr. Comrie's opinion that Plaintiff could perform simple routine tasks, but gave no weight to his opinion that Plaintiff was markedly limited in maintaining social functioning as he did not describe the extent of the limitation.  Tr. 25.

Drs. Postovoit and Kester both opined that Plaintiff's mental impairments would moderately impact her ability to carry out work related activities and that Plaintiff would have difficulties around crowds.  Tr. 83-85, 98-99.   Both doctors concluded that Plaintiff was not disabled.  Tr. 87, 101.  The ALJ gave some weight to these opinions, reasoning that they were largely consistent with the ALJ's RFC determination.  Tr. 25.  The ALJ gave little weight to Drs. Postovoit and Kester's opinions that Plaintiff would be distracted, have reduced mental energy, and have difficulties around crowds.  Tr. 25.  The ALJ reasoned that these opinions were internally inconsistent and did not set forth the extent of the limitations.  Tr. 25.

The ALJ erred to the extent that she gave the opinions of Drs. Postovoit, Kester, and Comrie greater weight than the opinions of Plaintiff's treating and examining physicians, particularly the opinions of Dr. Kouzes.  *See Lester*, 81 F.3d at 830 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.") (citations omitted).  Notably, each reviewing doctor stated that Plaintiff would have difficulties with social functioning; significantly, Dr. Comrie opined that Plaintiff was markedly limited in her ability to maintain social functioning.  Tr. Tr. 83-85, 98-99, 421.  These social limitations are seemingly consistent with Plaintiff's self-reporting and the opinion of Dr. Kouzes.  On remand, the ALJ may need to reevaluate the opinions of Drs. Postovoit, Kester, and Comrie after reevaluating Plaintiff's credibility and Dr.

Kouzes' opinions consistent with the Court's analysis *supra*.

### 4.    "Other" medical sources

Plaintiff argues that the ALJ erred in considering the opinions of "other" medical sources, including Chris Clark, M.Ed.; Deborah Blaine, M.S.; Ginny Baum, L.M.H.C.; Megan Crouse, L.I.C.S.W.; and, Jenny Walter P.A.C.

Generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a therapist, physician's assistant, or social worker. 20 C.F.R. § 416.913(d). An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. § 416.913(d); S.S.R. 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232. An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Germane reasons to discount an opinion include contradictory opinions and lack of support in the record. *Thomas*, 278 F.3d at 957. Even though medical source evidence is the only way to establish an impairment, an ALJ cannot ignore information from non-acceptable medical sources regarding a claimant's physical and mental capabilities. *Sprague*, 812 F.2d at 1232.

### a.  Mr. Clark and Ms. Blaine

Mr. Clark and Ms. Blaine completed an initial assessment upon Plaintiff's commencement of treatment at Central Washington Comprehensive Mental Health (CWCMH) in April 2012. Tr. 726-30. The ALJ gave little weight to the opinions contained in this assessment. Tr. 26. The ALJ reasoned that the opinions were vague, unexplained, did not contain an assessment of Plaintiff's functional limitations, relied on Plaintiff's unreliable self-reporting, and was inconsistent with the record as a whole, particularly Plaintiff's return to work four months later. Tr. 26.

The ALJ did not err in assigning little weight to Mr. Clark and Ms. Blaine's assessment. Although the Court concluded *supra* that the ALJ's characterization

of Plaintiff's symptom reporting as "unreliable" is unfounded, the additional reasons provided by the ALJ are germane.  Given the fact that the assessment was based on an intake or "screening" interview, Tr. 726, it is unsurprising that the opinions are "vague" and "unexplained," Tr. 26.  And the ALJ correctly noted that the assessment made no attempt to assess Plaintiff's functional limitations.  *See Key*, 754 F.2d at 1549 (mere diagnosis of an impairment is insufficient to sustain a finding of disability).  The ALJ did not err in evaluating Mr. Clark and Ms. Blaine's April 2012 assessment.

### b.  Ms. Baum

Ms. Baum, a counselor at Interfaith Community Health Center in Bellingham, Washington, completed a report after an initial psychiatric consultation on April 22, 2009.  Tr. 397-402.  Ms. Baum reviewed Plaintiff's history and diagnosed her with borderline personality disorder, history of amphetamine abuse, PTSD, and major depressive disorder.  Tr. 401.  Ms. Baum noted that Plaintiff had "not been able to sustain many jobs for long due to emotional instability and physical illness."  Tr. 399.  Ms. Baum recommended Plaintiff continue to participate in therapy.  Tr. 401-02.  The ALJ gave little weight to Ms. Baum's evaluation reasoning that it was vague and because the ALJ could not "determine what specific limitations [Ms. Baum] believed [Plaintiff] had."  Tr. 26.

The ALJ did not err in assigning little weight to Ms. Baum's opinions.  Similar to the intake assessment completed by Mr. Clark and Ms. Blaine, discussed *supra*, Ms. Baum's report after her initial consultation with Plaintiff does little more than detail Plaintiff's history and complaints.  Ms. Baum does not make her own clinical findings or attempt to assess Plaintiff's functional limitations.  Therefore, the ALJ did not err in giving little weight to Ms. Baum's opinions.

### c.  Ms. Walter

Ms. Walter, a physician's assistant who is often named as Plaintiff's primary

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 17

care provider, completed a physical evaluation of Plaintiff for purposes of Plaintiff's application for State benefits on March 27, 2009. Tr. 343-52. Ms. Walter opined that Plaintiff's mental and physical impairments caused severe limitations that would preclude Plaintiff from working. Tr. 345. The ALJ rejected this opinion because it was based on Plaintiff's unreliable self-reporting. Tr. 24.

As discussed *supra*, the ALJ's characterization of Plaintiff's symptom reporting as "unreliable" is unfounded. While this would typically be sufficient grounds to remand for further consideration, any error the ALJ made in evaluating Ms. Walter's opinion is harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination."). Ms. Walter's opinions are contained in a *physical* evaluation completed for purposes of Plaintiff's application for State benefits. It is unclear why Ms. Walter offered opinions regarding Plaintiff's mental impairments in a physical evaluation. Furthermore, Plaintiff is not contesting that the ALJ erred in evaluating her physical impairments so any error in weighing Ms. Walter's physical evaluation is inconsequential to the ultimate nondisability determination.

### d.  Ms. Crouse

Ms. Crouse, a social worker at Interfaith Community Health Center performed an intake evaluation on May 2, 2009. Tr. 391-96. Ms. Crouse stated that Plaintiff's "functional status" was moderately impaired due to Plaintiff's "chronic and/or variably severe deficits in interpersonal relationships, ability to engage in socially constructive activities, and ability to maintain responsibilities." Tr. 395. The ALJ did not discuss this opinion, but the ALJ did not err in failing to do so. Numerous medical sources opined that Plaintiff was moderately limited in social functioning. *See*, *e.g.*, Tr. 367-68 (Dr. Thorpe); Tr. 83-85 (Dr. Postovoit); Tr. 98-99 (Dr. Kester). The ALJ considered these opinions and generally gave some weight to the assessment that Plaintiff was moderately limited in social

functioning, as reflected in the ALJ's RFC determination. *See* Tr. 20 (noting Plaintiff could "occasionally interact with the public"). Given these opinions, Ms. Crouse's assessment is largely cumulative. Thus, Ms. Crouse's assessments are "neither significant nor probative," and the ALJ did not err in failing to address them. *See Howard*, 341 F.3d at 386 (ALJ is not required to discuss evidence that "is neither significant nor probative.")

## C.    GAF Scores

Plaintiff argues that the ALJ erred by rejecting the GAF scores assessed by Plaintiff's medical providers. ECF No. 18 at 19.

The GAF scale "is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association." 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000). Generally, GAF Scores do not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings." *Id.*; *see also McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008). Standing alone, "a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004). But GAF scores can sometimes be of "considerable help" when read in context with the medical evidence as a whole. *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir.2002).

In this case, the ALJ noted that Plaintiff's GAF scores, which ranged from 36 to 55, were "quite low."[2] Tr. 26. But the ALJ gave little weight to these scores

_____

[2]As pointed out by Defendant, "A GAF of 31-40 indicates '[s]ome impairment in reality testing or communication (e.g., speech is at time illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (e.g., a depressed man avoids friends, neglects family, and is unable to work . . .).'" ECF No. 20 at 17 (quoting

because they were based on Plaintiff's unreliable self-reporting. Tr. 26. The ALJ also stated that she did not "place a high degree of reliance on these scores or any opinions associated with the scores" because "GAF scores are highly subjective." Tr. 26.

The ALJ erred in rejecting Plaintiff's GAF scores. As discussed *supra*, the ALJ's characterization of Plaintiff's symptom reporting as less than credible is unfounded and not a reason to reject the GAF scores assessed by Plaintiff's treatment providers. Furthermore, the ALJ's general skepticism of GAF scores is not grounds for rejecting them. On remand, the ALJ should consider the GAF scores in context with the medical observations and opinions that accompany them.

**D.    Lay Witness Testimony**

Plaintiff argues that the ALJ failed to properly consider the statements of Norman Landry, Plaintiff's ex-boyfriend. ECF No. 18 at 25-27.

Lay witness testimony cannot establish the existence of medically determinable impairments. *Cf.* 20 C.F.R. § 416.913(d)(a). But lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006); 20 C.F.R. § 416.913(d)(4); *see also Dodrill*, 12 F.3d at 918-19 ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). Simply stating that the lay witness testimony does not objectively establish a medically determinable impairment is not a germane reason for rejecting lay witness testimony that concerns a claimant's ability to work. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (stating that the ALJ "should not have discredited [a lay witness's] testimony on the basis of its relevance or irrelevance to medical conclusions.").

American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. Text Revision 2000) (DSM-IV-TR)).

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 20

Mr. Landry and Plaintiff were in a relationship from July 2008 to May 2011. Tr. 313. Mr. Landry stated that he and Plaintiff would go on walks and watch television. Tr. 255. Mr. Landry stated that Plaintiff had anxiety and would spend most of her time in her room. Tr. 255. Mr. Landry noted that Plaintiff "hardly sleeps, constantly worries about everything, and [is] always on edge" and is forgetful. Tr. 256-57, 315. Mr. Landry stated that Plaintiff can make sandwiches, use public transportation, shop for food and personal items, perform household chores, and take care of herself. Tr. 257-58, 314. Mr. Landry stated that Plaintiff is unable to clean the house or handle money. Tr. 257-58; *but see* Tr. 315-16 (Mr. Landry reported Plaintiff able to clean and do laundry and handle money). Mr. Landry describes Plaintiff as a "loner" who has "a lot of difficulties getting along with others." Tr. 259-60, 317-18.

The ALJ gave little weight to Mr. Landry's statements because of internal inconsistencies and inconsistencies between Mr. Landry's two statements, the medical evidence, and Plaintiff's reported activities. Tr. 23.

The ALJ erred in giving little weight to Mr. Landry's statements. Although Mr. Landry's statements were not perfectly consistent, in most instances, they aligned with Plaintiff's own reports. Plaintiff does not contest that she is physically capable of performing certain ADL. Mr. Landry's description of Plaintiff's isolating behavior and lack of social functioning skills is likewise similar to Plaintiff's own reporting and the assessments of Plaintiff's examining and reviewing medical sources. The fact that Mr. Landry's statements are contrary to some of the medical evidence is not a germane reason for rejecting his testimony concerning Plaintiff's ability to work. *Bruce*, 557 F.3d at 1115. On remand, the ALJ should reconsider Mr. Landry's statements consistent with the Court's rulings *supra*.

**E.    RFC and Hypothetical Questions**

Plaintiff argues that the ALJ failed to include all of Plaintiff's limitations in

1  the ALJ's formulation of Plaintiff's RFC.  Plaintiff argues that the ALJ concluded

2  that Plaintiff could not work a full workday because the ALJ determined that

3  Plaintiff was only able to "stand and/or walk, and sit, for about six hours in an

4  eight-hour day," Tr. 20.  ECF No. 18 at 27.

5      Given that the Court is remanding the case for the ALJ to reconsider the

6  evidence in light of the errors discussed *supra*, the Court need not reach the issue

7  of whether the ALJ erred in her RFC determination and hypothetical questions to

8  the VE.  If, on remand, the ALJ concludes that Plaintiff has different functional

9  limitations, then the ALJ should modify her RFC determination accordingly.

10     On a final note, the Court disagrees with Plaintiff's argument that the ALJ's

11  RFC determination means that Plaintiff is only capable of standing/walking/and

12  sitting for a combined total of six hours a day.  The ALJ's phrasing is perhaps

13  somewhat ambiguous.  But as pointed out by Defendant, the ALJ apparently

14  intended to adopt the physical RFC assessment agreed upon by multiple reviewing

15  medical sources.  ECF No. 20 at 20.  Dr. Robert Bernardez-Fu opined that Plaintiff

16  could stand and/or walk (with normal breaks) for a total of about six hours in an

17  eight-hour workday, and sit (with normal breaks) for a total of about six hours in

18  an eight-hour workday.  Tr. 95.  Mary Knox, SDM and Juanita Casebolt-Baez

19  assessed identical stand/walk/sit limitations.  Tr. 82, 404.  Furthermore, in

20  discussing the opinion of David Martinez, DO, the ALJ opined that Plaintiff could

21  "stand and/or walk, and sit, for about four hours in an eight-hour day."  Tr. 24.

22  The ALJ then essentially parsed this limitation to mean "[Plaintiff] can sit for four

23  hours, and stand for four hours."  Tr. 24.  Given the identical opinions of three

24  consulting medical experts, as well as the ALJ's apparent understanding of her

25  phrasing evidenced elsewhere in her opinion, the Court concludes that the ALJ's

26  RFC meant that Plaintiff could stand, walk, and sit for six hours each, or for at

27  least eight hours in some combination.  Even though the Court finds no error in

28  this regard, the ALJ might consider rephrasing her walk/stand/sit limitations in any

subsequent decision to avoid ambiguity.

**CONCLUSION**

Plaintiff argues the ALJ's decision should be reversed and remanded for an immediate award benefits.  The Court has the discretion to remand the case for additional evidence and findings or to award benefits.  *Smolen*, 80 F.3d at 1292.  The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose.  *Id*.  Remand is appropriate when additional administrative proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  In this case, the Court finds that further development is necessary for a proper determination to be made.

On remand, the ALJ shall reexamine Plaintiff's statements and testimony and reassess Plaintiff's RFC, taking into consideration the opinions of Dr. Kouzes' and the State agency reviewing physicians, the statements of Mr. Landry, and all other medical evidence of record relevant to Plaintiff's claim for disability benefits.

In Plaintiff's reply brief, she requests that she "be allowed to amend her closed period of disability to a continuing period of disability if her attempt to work ended due to her impairments prior to the end of her trial work period, or her work attempt ended up being an unsuccessful attempt."  ECF No. 22 at 20.  The Court makes no ruling on this request.  But the Court sees no reason why Plaintiff may not raise the issue before the ALJ on remand.

Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.    Application for attorney fees may be filed by separate motion.

1    The District Court Executive is directed to file this Order and provide a copy
2 to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff**
3 and the file shall be **CLOSED**.
4    DATED April 8, 2015.
5
6  _____
7                            JOHN T. RODGERS
                   UNITED STATES MAGISTRATE JUDGE
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 24